8AO 9 (REV 5/85) Criminal Complaint  Case 1:07-cr-00773   Document 1   Filed 11/26/2007   Page 1 of 8   AUSA Julie B. Ruder (312) 886-1317

FILED LS 07 CR 773
FILED
NOVEMBER 26, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

NORTHERN  DISTRICT OF  ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JOSHUA HINES

**CRIMINAL COMPLAINT**

CASE NUMBER: 07 CR 773

FILED NOV 2 6 2007 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about May 4, 2007, at Aurora, in Kane County, in the Northern District of Illinois, defendant

> knowingly and intentionally distributed a controlled substance, namely, in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance,

in violation of Title 21, United States Code, Section 841(a)(1).

I further state that I am a Special Agent, ATF, and that this complaint is based on the following facts:

See attached Affidavit.

Continued on the attached sheet and made a part hereof:  X Yes  _ No

_____
Mark A. Anton, Special Agent, ATF
Signature of Complainant

Sworn to before me and subscribed in my presence,

November 26, 2007                           at    Chicago, Illinois
Date                                                City and State

JEFFREY COLE, U.S. Magistrate Judge          _____
Name & Title of Judicial Officer              Signature of Judicial Officer

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) |
| COUNTY OF COOK | ) |

## AFFIDAVIT

I, Mark A. Anton, after being duly sworn, state as follows:

1. I am a Special Agent, U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Chicago Field Division's Fox Valley Gang Violence Task Force, and have been so employed for eight years. Prior to ATF I was employed for seven years as a state narcotics agent with the Wisconsin Department of Justice, Division of Narcotics Enforcement, assigned to the Milwaukee Field Office. I have received specialized training in the enforcement of the federal firearm and narcotics laws, including detailed instruction in the areas of drug identification, investigative techniques, criminal law, undercover operations, informant development and handling, physical and electronic surveillance, and the debriefing of defendants, witnesses, and informants. My training has also included instruction on the various methods and procedures utilized by drug organizations to illegally import, transport, and distribute controlled substances and listed chemicals used to manufacture controlled substances, as well as the methods drug organizations use to launder and conceal proceeds of their drug trafficking and protect these operations through intimidation and violence.

2. During the course of my career, I have been involved in several hundred investigations related to street gang organizations and their distribution of controlled substances, either as a case agent or in a supporting role. I am familiar with and have participated in all of the normal methods of investigation, including, but not limited to, visual surveillance, the questioning of witnesses, the use of informants, undercover operations, the use of pen registers, and the

1

interception of wire communications. I have debriefed numerous defendants, informants, and witnesses who have personal knowledge regarding drug trafficking organizations. As a result, I am familiar with the methods of operation of narcotics traffickers, including the distribution, storage, and transportation of narcotics, and the collection of the proceeds of narcotics trafficking and money laundering, in violation of Title 21, United States Code, Sections 841, 843, 846, 952, 960, 963, and Title 18, United States Code, Section 1956.

3. The following information is based upon my personal observations, recorded conversations, knowledge and information I received from other federal law enforcement officers, the Aurora, Illinois Police Department, members of the Fox Valley Gang Crimes Task Force and the North Central Narcotics Task Force (collectively, the "Task Force"), as well as from a cooperating witness who has proven reliable and provided information that has been independently corroborated, as set forth in part herein.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of an arrest warrant and a complaint charging JOSHUA HINES with a violation of Title 21, United States Code, Section 841(a)(1), it does not contain all the information known to me concerning this investigation.

5. In or about February 2007, a confidential informant ("the CI") was approached by members of law enforcement in connection with the CI's suspected participation in narcotics trafficking in and about Aurora, Illinois. When the CI was approached, he/she expressed a desire to assist law enforcement with respect to other individuals the CI knew were distributing narcotics

in Aurora.[1] Since that time, the CI has voluntarily been cooperating with law enforcement. The CI is not now facing criminal charges in any jurisdiction. To date, the CI has been paid approximately $6,160 in exchange for his/her assistance in this and other investigations, which total includes a payment of approximately $5,300 for safety-related relocation expenses. No promises have been made to the CI regarding any of his/her previous illegal acts, although the CI is of the belief that his/her cooperation will be considered by law enforcement in connection with any charging and/or sentencing decisions relating to any criminal exposure he/she may have. The information provided by the CI has been corroborated by independent investigation that included physical surveillance, consensually recorded telephone calls, and controlled purchases of narcotics.

6. On or about May 4, 2007, the CI told officers that the CI believed he/she could buy two-and-a-half ounces of crack cocaine from JOSHUA HINES, by contacting HINES on HINES's personal telephone number. The CI said he/she has known HINES since approximately 1997 or 1998, and met HINES in the neighborhoods on the West Side of Aurora. The CI told officers that he/she knew HINES to be a drug dealer, and estimated that he/she had purchased powder and/or crack cocaine from HINES approximately 75 to 100 times, in amounts ranging from an ounce to two-and-a-quarter ounces.

7. On or about May 4, 2007, at approximately 1:00 p.m., the CI, at the direction of the Task Force, called HINES at cellular number 630-328-9290, but got no answer.

---

[1] The CI has the following criminal history. The CI has arrests for offenses such as fleeing the police, resisting a police officer, theft, obstruction of justice, weapons offenses, narcotics offenses, and traffic offenses. The CI has been convicted of obstruction of justice, fleeing the police, theft, a weapons offense, and narcotics offenses. The CI's most recent conviction was in 2006.

3

8. The same day, at approximately 1:15 p.m., the CI, at the direction of the Task Force, called a person later identified as HINES at the same phone number. The conversation was consensually recorded in the presence of one of the Task Force Officers. During the phone call, the CI asked the person on the other end of the line – identified by the CI as HINES – where he was. HINES replied that he was headed to the city. The CI said, "let me do like two and a half before you go."[2] HINES replied, "Before I go?" The CI said, "Yeah." HINES asked, "Two and a half?" The CI said, "Straight drop, though." HINES responded, "Two stacks." The CI whistled under his/her breath, and HINES stated, "I'm paying for that shit." The CI asked, "Two stacks?" HINES responded, "Yeah. Pull it straight out of the water, you gotta do two; I'm not going to do nothing to it." The CI asked when and where HINES could meet the CI, and HINES said 15-20 minutes "on the M."

9. Based on my experience and training, the experience and training of other law enforcement officers I have consulted, and a debriefing of the CI after the telephone call, I understand "two and a half" to refer to two-and-a-half ounces of crack cocaine, and "two stacks" to refer to $2,000. Further, I understand "pull it straight out of the water" and "I'm not going to do nothing to it" to refer to the fact that HINES would provide the crack cocaine to the CI in a pure form, just after cooking it, without adding "cut" or filler to the substance.

10. According to the CI, when HINES said "on the M," the CI understood HINES to be referring to Manor Place in Aurora, Illinois. The CI told officers that he/she had purchased narcotics

---

[2] A formal transcript has not yet been prepared of this call. These quotes are based on my initial review of the telephone call.

4

from HINES four to five times at 534 Manor Place in Aurora, and knew this to be a house that HINES used as a spot for selling narcotics.

11. At approximately 1:30 p.m., a Task Force Officer searched the CI and his/her vehicle, in the presence of another officer, for contraband or cash, with negative results. Also in the presence of another officer, a Task Force Officer provided the CI with $2,000 in United States Currency. The CI was then equipped with audio and video recording devices.

12. At approximately 1:42 p.m., while under surveillance by law enforcement and while equipped with operating audio and video recording devices, the CI arrived at 534 Manor Place, a residence, and parked in the driveway. At approximately 2:05 p.m., officers observed a silver Nissan Maxima arrive at 534 Manor Place, and pull into the driveway next to the CI's car. Officers saw a black male, later identified as HINES, exit the driver's side of the Nissan Maxima and enter the passenger side of the CI's car. The video recording device used by the CI captured HINES getting out of the Nissan Maxima and getting into the CI's car.

13. The video and audio recording device used by the CI further captured the discussion between HINES and the CI when HINES was in the CI's car in the driveway at 534 Manor Place. After HINES entered the CI's car, the video recording device captured the CI passing a stack of cash to HINES. HINES held the cash in his hand. The video recording device did not capture anything being passed from HINES to the CI. The discussion between the CI and HINES was of a personal nature.

14. Approximately two minutes later, at 2:07 p.m., officers saw HINES get out of the CI's vehicle, get back into the Nissan Maxima, and drive away.

5

15. Based on multiple previous encounters, the Task Force Officers watching the transaction recognized the man who entered the CI's vehicle at 534 Manor Place as JOSHUA HINES. As just one example, one of the Task Force Officers interviewed HINES in 2003, when HINES was the victim of a stabbing incident. That officer identified the person entering the CI's car at 534 Manor Place on May 4, 2007, as HINES. In addition, officers have reviewed Aurora Police Department booking records, namely the booking photo for JOSHUA HINES. The photo in the booking records matches the person whom officers saw entering the CI's car at 534 Manor Place on May 4, 2007.

16. After HINES left, the CI met agents at a pre-determined location. The audio and video recording device was still working, and the CI was still under surveillance. When the CI arrived at the meeting spot, the CI provided one of the officers with a plastic bag containing a white chunky substance with the appearance of crack cocaine. According to the CI, the plastic bag and its contents were provided to the CI by HINES, in exchange for the $2,000. Officers searched the CI and the CI's car for contraband and cash, with negative results. The CI was then released.

17. The white chunky substance was later submitted to the Illinois State Police Rockford Forensic Science Laboratory, in Rockford, Illinois, for testing. The Laboratory Report indicates that the substance recovered from the CI on May 4, 2007 was a chunky substance weighing 64.4 grams, and consisting of cocaine base.

18. Based on the foregoing, I believe that the actions of JOSHUA HINES were in

Case 1:07-cr-00773   Document 1   Filed 11/26/2007   Page 8 of 8

violation of Title 21, United States Code, Section 841(a)(1), in that he knowingly and intentionally distributed a controlled substance, namely, in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance.

FURTHER AFFIANT SAYETH NOT.

_____
Mark A. Anton, Special Agent
Department of Justice
Bureau of Alcohol, Tobacco, Firearms & Explosives

Subscribed and sworn to before me this
26th day of November, 2007

_____
JEFFREY COLE
United States Magistrate Judge

7