IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA    ) | |
| ) | No. 07 CR 773-1 |
| v.    ) | |
| ) | Honorable Charles R. Norgle, Sr. |
| JOSHUA HINES    ) | |

### NOTICE OF FILING

To:    **JULIE RUDER**        **SHEILA LAVIN**
          Assistant U.S. Attorney    U.S. Probation Officer
          219 S. Dearborn, 5th Fl    55 E. Monroe, Ste 1500
          Chicago, IL 60604    Chicago, IL 60603

     Please take notice that on this 14th day of August, 2008, the undersigned filed the following document(s) in the above captioned cause, a copy of which is attached hereto:

**DEFENDANT HINES' OBJECTIONS TO THE PSR**

                      Respectfully submitted,

                      FEDERAL DEFENDER PROGRAM
                      Terence F. MacCarthy
                      Executive Director

                      By:  s/   Helen J. Kim

                      FEDERAL DEFENDER PROGRAM
                      55 E. Monroe, Suite 2800
                      Chicago, IL 60603
                      (312) 621-8344

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )   | |
| ) | No. 07 CR 773-1 |
| v. ) | |
| ) | Honorable Charles R. Norgle, Sr. |
| JOSHUA HINES ) | |

**DEFENDANT HINES' OBJECTIONS TO THE PSR**

Defendant JOSHUA HINES, by the Federal Defender Program and its attorney, HELEN J. KIM, respectfully makes the following objections to recommendations made in the Presentence Investigation Report (PSR) distributed to the parties on August 1, 2008. Specifically, we object to the following:

**I.    The PSR's Calculations and Expected Addendum Recommendations**

The PSR, distributed to the parties on August 1, 2008, states that the proper Sentencing Guidelines (hereafter simply referred to as "Guidelines") to be used to determine Mr. Hines' advisory sentencing range is Section 2D1.1, the 2007 Edition.  PSR at 3.  We agree.

Using that section, the present PSR assigns Mr. Hines a base offense level of 36.  *See* U.S.S.G. § 2D1.1 (2007); PSR at 3.  This is the initial conclusion based upon a recommended finding that first, Mr. Hines should be held accountable to an admitted amount of cocaine base (crack cocaine) of 73.5 grams (64.4 grams in Count One and 9.1 grams in Count Two).  *See* PSR at 3.  It then recommends that Mr. Hines should be also held accountable for more drugs under

1

relevant conduct principles.  *See* PSR at 2-3.  It states that because Mr. Hines admitted, in a post-arrest statement, that he purchased between 4 ½ ounces and 9 ounces of cocaine twice per month for the past six months to one year from a certain individual, using the most conservative amounts, Mr. Hines should be held responsible for an additional total of 54 ounces, or 1530.9 grams of *cocaine base (or crack cocaine),* thus resulting in the total amount of 1,604.4 grams of cocaine base (1.60 kilograms). *Id.; see also* Government's Version with Exhibits 1-3.

We now understand, based on a telephone conversation with U.S.P.O. Sheila Lavin on August 11-12, 2008, that an Addendum will be filed with the Court changing that recommendation in several key ways.[1]  Specifically, Mr. Hines' alleged admissions, even taken straight from Government's Exhibit 3 attached to the Government's Version, does *not* state that Mr. Hines was purchasing cocaine base.  Rather, the language expressly states "cocaine" – i.e. powder cocaine – which may have been later turned into cocaine base by a fair reading of the ATF Report (Gov't Ex. 3), it is certainly not the same thing.

It is the defense's understanding that the anticipated Addendum will recommend, under U.S.S.G. § 2D.1.1, Commentary Note 10, Subsections (B), (D) and (E), that the combination of powder cocaine and cocaine base results in a need to convert to marijuana equivalents.  *See* U.S.S.G. § 2D1.1, n. 10.  We further expect the relevant conduct recommendation by Probation will be that an additional 54 ounces, or 1530.9 grams of *powder cocaine (not crack cocaine)* will total 1,604.4 grams of cocaine; this will become 1330.9 grams of marijuana under the U.S.S.G. § 2D1.1 commentary notes and conversion instructions.  As Mr. Hines admitted in his plea to

---

[1] As we are filing this Memorandum prior to receiving the actual Addendum, so we submit the expected changes in order to give the Court advance notice of the expected, remaining issues for the Sentencing Hearing.

possession or distribution of 73.5 grams of cocaine base, this would be converted to 1470 kilograms of marijuana under U.S.S.G. § 2D1.1, n.10 (E). The resulting base offense level would be 32, including the relevant conduct amounts. Yet under subsection (D), which deals specifically with cases involving some crack cocaine mixed with other substances, any base offense level should be decreased by 2 levels unless the stated exceptions apply. *See* U.S.S.G. § 2D1.1, n.10(E). As those exceptions do not apply in this case, we expect the Addendum to recommend an ending offense level of 30 (which includes the 73.5 grams of cocaine base plus relevant conduct for powder cocaine that Mr. Hines admitted to receiving/distributing in a post-arrest statement). With a decrease of 3 under U.S.S.G. § 3E1.1, his adjusted number should be 27; with the recommended criminal history category III, his advisory range will be 87-108 months.[2]

**II.     Mr. Hines' Still Objects to Any Relevant Conduct Amounts Beyond That Which He Admitted In His Plea Declaration.**

Despite being pleased with the expected changes to the PSR which should lower Mr. Hines' advisory range to 87-108 months, we are still objecting to *any* relevant conduct being added on to Mr. Hines' numbers.

Specifically, Mr. Hines is already being held accountable to an extremely lengthy and harsh penalty under 21 U.S.C. § 841(b)(1) as the amount he distributed in Count One was over 50 grams of cocaine base, or crack cocaine. He admitted to distributing the specific amount of

---

[2] Unfortunately, as Mr. Hines does not satisfy the criteria of the safety valve provisions of § 5C1.2, he must be sentenced in accordance with the statutorily required ten-year minimum imprisonment term. Therefore, his restricted guideline range becomes 120 months, in accordance with the statutorily required ten-year minimum imprisonment term.

64.4 grams, net weight, on May 4, 2007, to an individual cooperating with the government. *See* Plea Declaration at 2. He also admitted to possession of 9.1 grams, net weight, on November 28, 2007. *Id.* at 2-3. We now submit that no added amount, powder cocaine or cocaine base, should be added to Mr. Hines' calculations by this Court. Rather, Mr. Hines should strictly be held accountable for the Count One 64.4 grams, and Count Two 9.1 grams, of cocaine base for a total amount of 73.5 grams of cocaine base in all.

      A.      **Argument Regarding Acceptance of Resposibility Under U.S.S.G. § 3E1.1**

Prior to delving deeper into the argument against relevant conduct, however, we first note that while the government is seeking a very dramatic increase to Mr. Hines' numbers, stating that he should receive an offense level of 36 "because the offense and relevant conduct involved between 1.5 kg and 4.5 kg of cocaine base in the form of crack cocaine,"(*see* Government's Version at 3), it also states that if Mr. Hines "den[ies] his relevant conduct," the government's position will be that Mr. Hines "has not accepted responsibility within the maning of Guideline § 3E1.1(a), and the government will not move for a one-level reduction under Guideline § 3E1.1(b)." *Id.* at 4.

We strenuously assert that the full three levels should be deducted from Mr. Hines' guideline calculations under Section 3E1.1 of the Sentencing Guidelines Manual regardless of the government's contrary argument.

      In § 3E1.1, it provides:

      (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.

      (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon

> motion of the government stating the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate is resources effectively, decrease the offense by **1** additional level.

U.S.S.G. § 3E1.1 (2007).

> In the first commentary note, it states, with emphasis added:
>
> ". . . appropriate considerations include, but are not limited to, the following:
>
> (a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction in subsection (a). *A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection.* However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility . . . .
>
> (e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense . . . .
>
> (h) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility."

The second Note generally discusses the non-application of the credit in the case where the defendant puts the government through the burden of trial and denies the essential factual elements, while Note 3 states:

> "Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct) (see Application Note 1(a)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility."

5

U.S.S.G. § 3E1.1, n. 1-3.

Courts have found that credit for acceptance of responsibility can be given, even if, at some earlier time, a defendant did or said something entirely inconsistent with acceptance of responsibility. *See United States v. Anderson*, 259 F. 3d 853, 862 (7th Cir. 2001). Moreover, courts have consistently emphasized that a defendant "should not be required to affirmatively come clean on relevant conduct in order to obtain the reduction [for acceptance of responsibility]." *United States v. Cedano-Rojas*, 999 F.2d 1175, 1181-82 (7th Cir.1993); *see also United States v. White,* 993 F.2d 147, 150-51 (7th Cir.1993**)** and *United States v. Hammick*, 36 F.3d 594, 598 (7th Cir.1994) (a defendant may invoke her right to remain silent regarding relevant conduct not within the scope of the offense of conviction and still be entitled to a sentence reduction for acceptance of responsibility.) The decision about whether or not a particular defendant has accepted responsibility for his actions is one that is rightfully left to the discretion of this court. *United States v. Hammick*, 36 F.3d 594, 600 (7th Cir. 1994) ("it is the discretion of the sentencing court to decide whether the defendant has in all other respects forthrightly avowed responsibility for his crime.")[3]

In this case, in particular, Mr. Hines fully confessed to the charges in his indictment, and he pleaded guilty by written Plea Declaration in a timely manner, notifying the government of his intent to do so long before it had any need to prepare for trial. Importantly, the Probation Department disagrees with the government's arugment about Mr. Hines' anticipated acceptance

---

[3] Most courts have used the totality of circumstances test to decide whether a defendant's actions were demonstrative of true acceptance. Thus, for example, in *United States v. Schaefer*, the Seventh Circuit upheld a sentencing court's refusal to grant acceptance of responsibility credit to a defendant when his overall behavior, including refusal to deny guilt in the face of contradictory evidence, was clearly made part of the record. 107 F.3d 1280, 1290 (7th Cir. 1997).

of responsibility; it believes Mr. Hines *has* accepted responsibility for his actions under the meaning of § 3E1.1(a).  We submit that as none of the objections being made by Mr. Hines' appointed counsel can be characterized as "false denials" or "frivolous contentions" of any critical allegations or key elements to the crime, respectfully, the denial of credit is *not* the appropriate remedy.  Counsel's decision to pursue a legal argument as an advocate appointed on behalf of Mr. Hines is part of the totality of the circumstances test.  This Court should find that Mr. Hines has accepted responsibility for his offense in the manner contemplated by Sentencing Commission, while still granting him the benefit of a non-frivolous argument related to relevant conduct being attributed to him by the government and PSR.

> **B.     Specific Non-Frivolous Reasons Against Relevant Conduct Amounts Suggested By The Government.**

First, we argue against the relevant conduct being sought by the government for reasons tied directly to Part I in this filing.  As stated there, Mr. Hines' alleged admissions, taken straight from Government's Exhibit 3 attached to the Government's Version, is *not* that Mr. Hines was purchasing cocaine base. Yet the government wants to hold Mr. Hines accountable to massive amounts of cocaine base on relevant conduct principles.

Specifically, rather than acknowledging an adjusted offense level of 27 for the reasons cited in Part I, the government's argument is that he should be at a level 33 with acceptance credit, and 36 without credit.  The argument is flawed.  Powder cocaine is not the same thing as cocaine base.  It simply cannot be accepted for the reasons stated and Mr. Hines' advisory range must be 87-108 months, even with relevant conduct for powder cocaine, not anything higher.

Additionally, though, we seek the Court's consideration of an argument not to count any

additional amounts as relevant conduct against Mr. Hines. We premise this argument on the fact that there is one single piece of evidence used is Government's Exhibit 3, written by an AFT Agent.

In that Report, it states that after he was arrested and he was at the Aurora Police Station, Mr. Hines was spoken to about the ability to cooperate with law enforcement. It states that Mr. Hines indicated ". . . he was willing to do whatever it would take to reduce the amount of time that he may have to face on his pending federal drug case." Gov't Ex. 3 at ¶ 5. It later states, "S/A Anton then asked HINES to start with current source of supply for cocaine" to which Mr. Hines replied, ". . . he obtains 4 ½ ounces to 9 ounces of cocaine at a time from an Aurora Latin King gang member named 'Omar.'" *Id.* He gave what can be nothing but an estimated figure of $2,800-$3,000 for the deals involving 4 ½ ounces, and $5,800-$6,000 for deals involving 9 ounces. *Id.* The Report then reads, "HINES *estimated* that he has been buying cocaine from 'Omar' for about the past six months to a years [sic] on the average of two times per month." (Emphasis added).[4]

We now submit there simply is now way to accurately attribute numbers to Mr. Hines without the automatic use of conjecture, speculation and guessing. Attempting to hold him accountable to the higher amounts and ranges is unfair, on its face, for obvious reasons. Even the PSR does not recommend that route be taken; instead the PSR recommends that the Court should use "the most conservative amounts." PSR at 3. The reality is that Mr. Hines was guessing as to

---

[4] In comparison, later in the Report it states that Mr. Hines much more specifically admitted to his receipt of a half kilogram of cocaine from Omar for $8,500, with $2,000 still owed. *Id.* at ¶ 6.

amounts, he could also be inflating amounts as a means of making himself seem more useful to the ATF Agents in the context of the situation in which he was in. There simply is no reliable way to measure exactly what he did or did not purchase on a weekly and monthly basis. In contrast to the more specific admissions by Mr. Hines, in which he provides details and there is much better proof of his true accountability, the government's proof falls short in this case. To guess and add numbers/amounts involves automatic conjecture and speculation that cannot be supported.[5] Accordingly, we ask the Court to hold Mr. Hines accountable to the Count One amount of 64.4 grams, and Count Two amount of 9.1 grams, for a cocaine base total amount of 73.5 grams of cocaine base, and reject the PSR's recommendation/government's argument for any added amount of powder cocaine or cocaine base.

---

[5] We also note that in the Government's Version of the Offense, there is the following paranthetical reference: "(Individual A estimates that he purchased powder and/or crack cocaine from Hines approximately 75-100 times, including the May 2007 distribution, in amounts ranging from an ounce to two-and-a-quarter ounces.)" The PSR states this conduct should *not* be counted. *See* PSR at 2. We believe the PSR is correct in this conclusion as the CI was a charged individual suspected of his own participation in narcotics trafficking in the Aurora area. *See* Criminal Complaint Affidavit by Mark A. Anton at 2. He received monetary compensation for his cooperation, relocation for safety-related reasons, but he was also under the belief that his cooperation would be considered by law enforcement in connection with charging and sentencing decisions relating to his own criminal exposure. *Id.* at 3. He had listed criminal history which included fleeing the police, resisting a police officer, theft, obstruction of justice, weapons offenses, narcotics offenses, and traffic offenses. *Id.* at FN 1. Most importantly, however, is the fact that no evidence, reports, statements or anything related to this CI has ever been tendered to the defense.

### III. Mr. Hines' Two Prior Driving Convictions Should Actually Be Counted As Four Criminal History Points Instead of Five.

Mr. Hines also objects to the PSR's recommendation for four criminal history points that stem from two charges in 2001 and 2002 for Driving on a Suspended License in Kane County, Illinois. PSR at 5.[6] We submit that these two convictions should, instead, count as three criminal history points.

In the first conviction, which occurred in 2001, Mr. Hines received a sentence of 60 days jail and one year conditional discharge, on June 4, 2004, which was completed satisfactorily on June 3, 2005. *Id.* We agree that this would likely count as 2 points under U.S.S.G. § 4A1.1(b) in the PSR. PSR at 5. Yet the PSR assigns 2 points to a second driving conviction that stemmed from an arrest in 2002. PSR at 5. There, Mr. Hines initially received a sentence of conditional discharge and 150 hours of community service on March 26, 2003. *Id.* His sentence was then revoked, and on June 4, 2004 – the same day as the sentence mentioned above, he also received the same imposed sentence of 60 days in jail. *Id.*

We now respectfully submit that under U.S.S.G. § 4A1.2(a)(2)(B), prior sentences are counted separately *unless the sentences were imposed on the same day*. In other words, because Mr. Hines received the same sentence of 60 days in prison for two driving convictions, his sentences were actually a consolidated one. Instead of receiving four points for these two convictions with a shared date for the imposition of 60 days, he should receive three criminal

---

[6] Mr. Hines also had a prior conviction that likely counts as one point: in 2001, he had a Possession of a Controlled Substance case in DuPage County for which he received 24 months probation. PSR at 4.

10

history points under the dictates of § 4A1.2(a)(2)(B).[7] We ask for the Court's finding in this regard.

WHEREFORE, for all the reasons stated, we respectfully request that the Court make findings as to the specific objections raised in this filing on behalf of Joshua Hines.

        Respectfully submitted,

        FEDERAL DEFENDER PROGRAM
        Terence F. MacCarthy
        Executive Director

        By:_____s/ Helen J. Kim_____

        55 E. Monroe, Suite 2800
        Chicago, Illinois 60603
        (312) 621-8344

---

[7] We are aware, however, that regardless of this argument, i.e. whether he has a total of four or five points, his criminal history category would remain a III.

**CERTIFICATE OF SERVICE**

The undersigned,  Helen J. Kim , an attorney with the Federal Defender Program, hereby certifies that in accordance with FED.R.CIV.P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**DEFENDANT HINES' OBJECTIONS TO THE PSR**

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on   August 14, 2008,  to counsel/parties that are non-ECF filers, including:

        SHEILA LAVIN
        United States Probation
        55 E. Monroe Street, 15th Floor
        Chicago, Illinois 60603

        By:       s/ Helen J. Kim

        FEDERAL DEFENDER PROGRAM
        55 E. Monroe St., Suite 2800
        Chicago, Illinois 60603
        (312) 621-8344